1 Rick Lyon (Cal. Bar No. 229288)
2 rick@dovel.com
  DOVEL & LUNER, LLP
3 201 Santa Monica Blvd., Suite 600
  Santa Monica, California 90401
4 Telephone: (310) 656-7066
5 Facsimile: +1 (310) 656-7069

6
7 *Attorney for Plaintiff*

8
9 **UNITED STATES DISTRICT COURT**
  **CENTRAL DISTRICT OF CALIFORNIA**
10

11 TRISHA SAINI, individually and on        Case No. 2:25-cv-10093
12 behalf of all others similarly situated,
                                            **CLASS ACTION COMPLAINT**
13           *Plaintiff*,
                                            Jury Trial Demanded
14
15 v.
16
   COMFRT LLC,
17
18           *Defendant*.
19
20
21
22
23
24
25
26
27
28

Class Action Complaint                                    Case No. 2:25-cv-10093

**Table of Contents**

I.     Introduction..................................................................................1

II.    Parties........................................................................................3

III.   Jurisdiction and Venue. .................................................................4

IV.    Facts. .........................................................................................4

       A.    Defendant's fake sales and discounts........................................4

       B.    Defendant's purported regular prices were not the prevailing prices
             during the 90 days immediately preceding Defendant's
             advertisement of the purported discounts. ..............................15

       C.    Defendant's advertisements are unfair, deceptive, and unlawful. ..........18

       D.    Defendant's advertisements harm consumers............................19

       E.    Plaintiff was misled by Defendant's misrepresentations. ....................21

       F.    Defendant breached its contract with and warranties to Plaintiff
             and the putative class.......................................................25

       G.    No adequate remedy at law. .................................................26

V.     Class Action Allegations. ............................................................27

VI.    Claims......................................................................................29

       First Cause of Action: Violation of California's False Advertising Law
             Bus. & Prof. Code §§ 17500 & 17501 et seq............................29

       Second Cause of Action: Violation of California's Consumer Legal
             Remedies Act .............................................................31

       Third Cause of Action: Violation of California's Unfair Competition Law......33

       Fourth Cause of Action: Breach of Contract.....................................36

       Fifth Cause of Action: Breach of Express Warranty............................37

       Sixth Cause of Action: Quasi-Contract/Unjust Enrichment.....................38

       Seventh Cause of Action: Negligent Misrepresentation ........................39

       Eighth Cause of Action: Intentional Misrepresentation ........................40

VII.   Relief.......................................................................................41

## I.      Introduction.

1.      Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.      While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.      Section 17500 of California's False Advertising Law prohibits businesses from making statements that they know or should know are untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.      Moreover, section 17501 of California's False Advertising Law provides, "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits advertising a former price that was not the prevailing price in the prior three months.

5.      In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6.      Additionally, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

7.   As numerous courts have found, fake sales violate these laws. And, they also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8.   Defendant Comfrt LLC ("Defendant" or "Comfrt") manufactures, markets, and sells hoodies, sweatpants, blankets, loungewear, and accessories ("Comfrt Products" or "Products"), including online through the Comfrt website, www.comfrt.com.

9.   Defendant advertises purported regular prices and purported limited-time sales offering steep discounts from those listed regular prices. Defendant consistently advertises sales of "Up to 50% OFF," "Up to 60% OFF, and "Up to 70% OFF" with a constant stream of promotions. As soon as one ends, the next one immediately begins. Here are some examples:



10. Far from being time-limited, the discounts on Defendant's Products are almost always available. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are almost always available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited time—quite the opposite, they are consistently available.

11. As described in greater detail below, after reviewing Defendant's website, www.comfrt.com, and seeing and relying on advertised sales, Plaintiff bought Products from Defendant. When Plaintiff made her purchases, Defendant advertised that a purported sale was going on, and Plaintiff believed that she was being offered steep discounts from the purported regular prices that Defendant advertised. And based on Defendant's representations, Plaintiff believed that she was purchasing Products whose regular prices and market values were the purported list prices that Defendant advertised, that she was receiving substantial discounts, and that the opportunity to get those discounts was time-limited. These reasonable beliefs caused Plaintiff to buy from Defendant.

12. The representations that Plaintiff relied on, however, were not true. The purported regular prices Defendant advertised were not the true regular prices at which Defendant usually sells the Products. The purported discounts were not true discounts, and the sales were ongoing—not time-limited. Had Defendant been truthful, Plaintiff and other consumers like her would not have purchased the Products, or would have paid less for them.

13. Plaintiff brings this case for herself and other customers who purchased Comfrt Products from Defendant.

## II. Parties.

14. Plaintiff Trisha Saini is domiciled in Long Beach, California.

15.    The proposed class includes citizens of California.

16.    Defendant Comfrt LLC is a limited liability company that maintains its principal place of business at 382 NE 191st St. PMB 627737, Miami, Florida, 33179. Its sole member is Hudson Leogrande, who is a resident of Miami, Florida.

## III.    Jurisdiction and Venue.

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

18.    The Court has personal jurisdiction over Defendant because Defendant sold Comfrt Products to consumers in California, including to Plaintiff.

19.    Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Comfrt Products to consumers in California and this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV.    Facts.

### A.    Defendant's fake sales and discounts.

20.    Defendant Comfrt manufactures, distributes, markets, and sells hoodies, sweatpants, blankets, loungewear, and accessories. Comfrt sells its Products directly to consumers, including through its website, www.comfrt.com.

21.    Defendant creates the false impression that its Products' regular prices are higher than they truly are.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22.    At any given time, on its website, Defendant advertises steep discounts on its Products. These discounts consistently offer "up to X%" off the listed regular prices that Defendant advertises. Even though in truth these discounts run in perpetuity, Defendant claims they are limited-time offers. Defendant changes the names of its various promotions but the discounts offered are consistently available. Here are some of the promotions that Defendant runs on its webpage:



23.    In addition to the attention-grabbing banners like those shown above, Defendant lists the discount prices for its Products alongside the listed regular prices appearing in strikethrough font. Example screenshots are provided on the following pages:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Captured December 15, 2024 [1]*

_____

[1] The text appearing beneath each photo in this screenshot has been overlaid for ease of viewing.

Class Action Complaint                    6                    Case No. 2:25-cv-10093



*Captured November 27, 2024* [2]

24.    Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely. For example, as depicted below, in January 2025, Defendant was promoting a "New Years Sale" offering "up to 60% OFF." And its Products were shown with strike-through regular prices alongside the discounted prices. For example, its Signature Fit Hoodie was shown with a strikethrough price of "$120" alongside a discounted sale price of "$39." And its

---

[2] The text appearing beneath each photo in this screenshot has been overlaid for ease of viewing.

Cloud Zip Hoodie was shown with a strikethrough price of "$130" alongside a discounted sale price of "$39":



*Captured January 15, 2025*

25.     As depicted above, Defendant represented that this promotion was a "New Years Sale." To reasonable consumers, this means that soon after New Years is over, Defendant's Products will no longer be on sale and will retail at their purported regular price. For example, a reasonable consumer would understand that the Signature Fit Hoodie and Cloud Zip Hoodie would return to their "$120" and "$130"

listed prices. But Defendant's sales do not end, and its purported regular prices do not return.

26.    Instead, Defendant keeps offering discount pricing and simply changes the name of the sale. For example, in February, Defendant changed the name of the promotion from the "New Years Sale" to "Winter Sale." But the sale remained the same. It included the same "Up To 60% OFF" and the same discounted strikethrough pricing.  For example, its Signature Fit Hoodie and Cloud Zip Hoodie products were still shown with the same strike-through prices ("$120" and "$130") alongside the same discounted sale prices ("$39"):




*Captured February 5, 2025*

27.    Similarly, reasonable consumers seeing the "Winter Sale" promotion, would understand that soon after Winter is over, Defendant's Products will no longer

be on sale and will retail at their purported regular price. For example, a reasonable consumer would understand that the Signature Fit Hoodie and Cloud Zip Hoodie would return to their "$120" and "$130" listed prices. But because Defendant's sales do not end, its purported regular prices do not return. Instead, Defendant simply renames the promotion.

28.    Once Winter was over, Defendant changed the name of the "Winter Sale" to the "Spring Sale." But again, the promotions and strikethrough pricing remained. The same "Up to 60% OFF" appeared on the banner at the top of Defendant's homepage, and the same strikethrough pricing remained. For example, the Signature Fit Hoodie and Cloud Zip Hoodie again remained listed with same strikethrough regular prices ("$120" and "$130") alongside the same discounted prices ("$39").



*Captured March 19, 2024*

29.    Defendant repeats the process over and over. The Spring Sale becomes the Pre-Summer Sale, which becomes the Summer Sale, which becomes the Early Black Friday Sale, and so on. Regardless of what Defendant is labeling its promotion on any given day, the "% OFF" promotions and the strikethrough pricing persist.

30.    Using these tactics, Defendant leads reasonable consumers to believe that Defendant's sales are only available for a limited time, but, as shown above, they continue constantly, and are continuously replaced by similar sales. The list (or strike-through) prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.

31.    To confirm that Defendant consistently offers discounts off purported regular prices that are automatically applied to all orders, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org)[3] and screen captures from the www.comfrt.com website. That investigation confirms that Defendant's sales have persisted continuously. For example, 65 screenshots of Defendant's website, www.comfrt.com, were captured on the Wayback Machine, from dates between October 2023 and October 2025. This includes screenshots captured on 10/11/23; 10/31/23; 1/12/24; 1/18/24; 4/18/24; 4/20/24; 5/14/24; 5/27/24; 6/11/24; 6/16/24; 7/19/24; 8/3/24; 8/18/24; 8/22/24; 8/29/24; 9/15/24; 9/26/24; 9/27/24; 10/6/24; 10/14/24; 11/2/24; 11/9/24; 11/12/24; 11/16/24; 11/18/24; 11/27/24; 12/1/24; 12/5/24; 12/15/24; 12/17/24; 12/21/24; 12/22/24; 12/31/24; 1/1/25; 1/15/25; 2/5/25; 2/19/25/ 3/5/25; 3/19/25; 4/2/25; 4/16/25; 4/30/25; 5/5/25; 5/23/25; 6/2/25; 6/17/25; 7/2/25; 7/18/25; 8/1/25; 8/11/25; 8/23/25; 9/2/25; 9/14/25; 10/5/25 and 10/20/25.

---

[3] The Internet Archive, available at archive.org, is a library that archives web pages. *See* https://archive.org/about/.

1

2

32.     Of these 65 randomly selected screenshots of Defendant's website captured on the Wayback Machine, all 65 of them (i.e. 100%) displayed a purportedly time-limited discount on Defendant's Products. And the Products' purported regular prices were shown in strikethrough font alongside the discounted prices in substantially the same manner as depicted above in paragraphs 23 through 28 above. Comfrt's promotions run continuously, and its discounts are effectively permanent.

33.     Reasonable consumers do not realize the fake nature of the sale. It is not apparent from merely purchasing the Products, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale—especially when Defendant changes the names of its sales despite offering the same or a similar discount. Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sale is not limited in time, that the discounts are fake, and that the advertised regular prices are fake.

34.     In addition, Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts throughout the purchasing process.

35.     For example, the product pages for Comfrt's Products repeat the same fake prices and fake discounts in substantially the same format. They display the fake

1    regular price in strike-through format alongside the purported discounted price.  For

2    example, the product page for the "Travel Essentials Hoodie" is depicted below:



*Captured September 18, 2025*

36.    The "shopping bag" pop-up windows for Comfrt's Products also repeat

the same fake prices and fake discounts in substantially the same format. They too

display the fake regular price in strike-through format alongside the discounted sale

price. For example, the "shopping bag" pop-up window for the "Travel Essentials

Hoodie" is depicted below:



*Captured September 18, 2025*

37.    But the truth is, the listed regular prices that appear on Comfrt's Product

pages and "shopping bag" (e.g., "$130.00" for the "Travel Essentials Hoodie") are not

its regular prices. Instead, its regular prices are much lower, because Defendant almost

always offers steep discounts on its Products. As a result, Defendant's customers did not receive a true discount. They received a much lower discount, or no discount at all.

38.     Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the limited-time promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

39.     Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendant's website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, and after the sale ends, consumers buying from Defendant on its website had to (or will have to) pay the list price to get the item and did not (or will not) have the opportunity to get a discount from that list price.

40.     Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market values of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant almost always offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The

list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells. And, the list prices do not represent the true market value for the Products, because Defendant's Products are almost always available for less than that on Defendant's website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are consistently available.

**B.     Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts.**

41.     Defendant primarily sells its Comfrt Products through its website, www.comfrt.com. Some Comfrt Products are also available through a small number of third-party websites and retailers, including TikTok (through TikTok Shop) and Instagram (through Instagram Shop).

42.     But the Comfrt Products available through these third parties are likewise consistently sold for well below Defendant's listed regular price. The pricing and purported discounting mirrors the pricing and purported discounting on Comfrt's own website. For example, on October 18, 2025, Comfrt advertised its Travel Essentials Hoodie on its website with a discounted price of $49 and a regular strikethrough list price of $130:



*Captured October 18, 2025*

Class Action Complaint                    15                    Case No. 2:25-cv-10093

43.     On that same day, Comfrt's Travel Essentials Hoodie was available on Instagram Shop and TikTok Shop with substantially the same pricing. They both advertised a regular strikethrough list price of $130. And Instagram advertised a discounted price of $49, while TikTok advertised a discounted price of $48.99:

Instagram:                                    TikTok:

*Both captured October 18, 2025*

44.     This holds true across Comfrt's Products. Google Shopping data (which shows the "typical" price for products over the prior three months based on stores across the Internet) shows that the Comfrt Products are typically sold by third parties at prices consistent with the discounted prices on Defendant's website and nowhere near the advertised regular prices on Defendant's website. For example, Defendant

1    lists its Minimalist Hoodie on its website with a discounted price of $49 and a regular

2    strikethrough list price of $120:



*Captured October 18, 2025*

45.    And Google Shopping data shows that this same product has been

"[t]ypically" sold in the preceding three months in the range of "$49-$59," which is at

or near the purportedly discounted price appearing on Defendant's website ($49) and

nowhere near Defendant's advertised regular price of $120:



*Captured October 18, 2025*

46.    In short, as the above shows, Defendant's Products are regularly

available (both from Comfrt's website and third parties) for less than the purported

regular prices that Defendant's website advertises. This is not surprising, as prices

charged by third-parties typically converge on Defendant's price, especially since the Products are sold in an e-commerce market and Defendant, the manufacturer, sells the Products directly to consumers through its publicly available website.

47.    Moreover, Comfrt Products are primarily sold through Defendant's branded website, www.comfrt.com. If consumers are searching for a Comfrt Product, they will go to Defendant's website. For example, if a consumer searches "Comfrt hoodie" or "Comfrt sweatpants" on Google, the first sponsored and unsponsored result leads to www.comfrt.com. So, because the Comfrt Products are most commonly sold on Defendant's website, they are most commonly sold for the discounted prices available on Defendant's website.

**C.    Defendant's advertisements are unfair, deceptive, and unlawful.**

48.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it is not.

49.    Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

50.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

51.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price

comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

52.    And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

53.    Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engages in unlawful, unfair, and deceptive business practices.

**D.    Defendant's advertisements harm consumers.**

54.    Based on Defendant's advertisements, reasonable consumers expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products, that these are former prices that Defendant sold its Products at before the time-limited discount was introduced, and that they are the prevailing market prices for the Products.

55.    Reasonable consumers also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

56.    In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

57.    Consumers who are presented with discounts are substantially more likely to make a purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[4] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[5]

58.    Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[6]

59.    Thus, Defendant's false advertising harms consumers by depriving them of their reasonable expectations. In addition, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations,

---

[4] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[5] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[6] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

Plaintiff and the class paid more for the Products they bought than they otherwise would have.

**E.    Plaintiff was misled by Defendant's misrepresentations.**

60.    On April 24, 2025, Ms. Saini bought a pair of Blue Willow Cloud Sweatpants and a pair of Mist Coordinate Sweatpants from Defendant's website, www.comfrt.com. At the time, Defendant was running its "Spring Sale" promotion that advertised "Up To 65% OFF." Defendant listed the regular price, or strikethrough price, of the Blue Willow Cloud Sweatpants ("$70") alongside the discounted price ("$29"). Defendant also listed the regular price, or strikethrough price, of the Mist Coordinate Sweatpants ("$70") alongside the discounted price ("$29"). Below are the Product pages for the Blue Willow Cloud Sweatpants and Mist Coordinate Sweatpants around the time of Ms. Saini's purchase:



*Captured April 27, 2025*



*Captured April 27, 2025*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

61.     Ms. Saini's order confirmation for this purchase is shown below:



62.     On August 14, 2025, Ms. Saini bought two more pairs of sweatpants, a pair of Blue Willow Cloud Sweatpants and a pair of Orchid Cloud Sweatpants, from Defendant's website, www.comfrt.com. At the time, Defendant was running its "Summer Sale" promotion that advertised "Up To 70% OFF." Defendant listed the regular price, or strikethrough price, of the Blue Willow Cloud Sweatpants ("$60") alongside the discounted price ("$29"). Defendant also listed the regular price, or strikethrough price, of the Orchid Cloud Sweatpants ("$60") alongside the discounted price ("$29"). Below are the Product pages for the Blue Willow Cloud Sweatpants and Orchid Cloud Sweatpants around the time of Ms. Saini's purchase:



*Captured August 9, 2025*

Class Action Complaint                        22                        Case No. 2:25-cv-10093



*Captured August 9, 2025*

63.    Ms. Saini's order confirmation for this purchase is shown below:



64.    Similarly, on July 27, 2024, Ms. Saini bought a pair of Bark Signature Fit Sweatpants from Defendant's website, www.comfrt.com. At the time, Defendant listed the regular price, or strikethrough price, of the Bark Signature Fit Sweatpants ("$75") alongside the discounted price ("$29"). Ms. Saini's order confirmation is shown below:



1    65.    Ms. Saini made each of these purchases while living in Long Beach,

2  California. For each purchase, Ms. Saini saw and relied on the representations on

3  Comfrt's website that she was receiving Products with a particular value and/or

4  market price and that she was receiving a price reduction. She would not have

5  purchased the Products if she knew that Comfrt Products were not discounted as

6  advertised, that she was not receiving Products with the advertised value and/or

7  market price, and that she was not receiving the advertised discount.

8    66.    Prior to making her purchases, Plaintiff reviewed Defendant's website

9  and saw that Defendant was advertising these substantial, time-limited discounts.

10  Plaintiff read and relied on the representations (like those shown above) on

11  Defendant's website, including that the Products had the regular prices listed on the

12  website in strikethrough font, but were being offered at a discounted sale price from

13  those regular prices, and that the sale was time-limited. Based on Defendant's

14  representations described above, Plaintiff reasonably understood that Defendant

15  usually (and formerly, before the promotion Defendant was advertising) sold the

16  Products she was purchasing at the published regular prices (shown in strikethrough

17  font), that these regular prices were the prevailing price and market value of the

18  Products that she was buying, that she was receiving the advertised discounts as

19  compared to the regular prices, that advertised discounts were only available for a

20  limited time (during the limited-time promotion), and that the Products would go back

21  to retailing for the published regular prices when the promotion ended. She would not

22  have made the purchases if she had known that the Products were not discounted as

23  advertised, and that she would not be receiving the advertised discounts.

24    67.    In reality, as explained above, Comfrt Products, including the Products

25  that Plaintiff purchased, are regularly available at a discount from the purported

26  regular prices. In other words, Defendant did not regularly sell the Products that

27  Plaintiff purchased at the purported regular prices, and the Products were not

28

Class Action Complaint                    24                    Case No. 2:25-cv-10093

discounted as advertised. Plus, the sales were not limited time—Defendant's products are regularly on sale.

68.     Plaintiff faces an imminent threat of future harm. She would purchase additional Comfrt Products in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while she could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so she cannot purchase the Products that she would like to purchase.

**F.     Defendant breached its contract with and warranties to Plaintiff and the putative class.**

69.     When Plaintiff, and other members of the putative class, purchased and paid for Comfrt Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the advertised discounted price.

70.     Defendant's advertisements, for example on its website, and in its price quotations, list the market value of the items that Defendant promised to provide (which, for Plaintiff, are detailed above). Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Plaintiff and the putative class.

71.     Defendant also warranted that the regular price and market value of the Products Plaintiff purchased were the advertised list prices and warranted that Plaintiff was receiving a specific discount on the Products.

72.     The regular price and market value of the items Plaintiff and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

73.     Plaintiff and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

74.     Defendant breached its contract by failing to provide Plaintiff and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendant also breached warranties for the same reasons.

**G.     No adequate remedy at law.**

75.     Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

76.     A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

77.    In addition, to obtain a full refund as damages, Plaintiff must show that the Products she bought have essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

78.    Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

79.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase the Comfrt Products she would like to purchase.

**V.    Class Action Allegations.**

80.    Plaintiff brings the asserted claims on behalf of the proposed class:

- <u>California Class</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Comfrt Products advertised at a discount on Defendant's website.

81.    The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their

current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity

82.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class members. Class members can be identified through Defendant's sales records and public notice.

### Predominance of Common Questions

83.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

84.    Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased Comfrt Products advertised at a discount. There are no conflicts of interest between Plaintiff and the class.

### Superiority

85.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands

of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

**<u>First Cause of Action</u>:**

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq.**

**(By Plaintiff and the California Class)**

86.    Plaintiff incorporates each and every factual allegation set forth above.

87.    Plaintiff brings this cause of action on behalf of herself and members of the California Class.

88.    Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

89.    Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and class members.

90.    As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, $70) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices advertised in strikethrough font from which time-limited discounts are calculated to denote "former" prices (i.e., the prices that Defendant charged before the time-limited discount went into effect.).

91.    The prices advertised by Defendant are not Defendant's regular prices. Those prices are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there is consistently a heavily advertised promotion ongoing entitling consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its

1    discounts from those former prices, were untrue and misleading. In addition,

2    Defendant's statements indicating that its discounts are limited in time are false and

3    misleading too.

4         92.    In addition, Defendant has violated, and continues to violate, section

5    17501 of the Business and Professions Code by advertising former prices that were

6    not the prevailing market price within three months next immediately preceding the

7    advertising. As explained above, Defendant's advertised regular prices, which

8    reasonable consumers would understand to denote former prices, were not the

9    prevailing market prices for the Products within three months preceding publication of

10   the advertisement. And Defendant's former price advertisements do not state clearly,

11   exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's

12   advertisements do not indicate whether or when the purported former prices were

13   offered at all.

14        93.    Defendant's misrepresentations were intended to induce reliance, and

15   Plaintiff saw, read, and reasonably relied on the statements when purchasing Comfrt

16   Products. Defendant's misrepresentations were a substantial factor in Plaintiff's

17   purchasing decision.

18        94.    In addition, class-wide reliance can be inferred because Defendant's

19   misrepresentations were material (i.e., a reasonable consumer would consider them

20   important in deciding whether to buy Comfrt Products.).

21        95.    Defendant's misrepresentations were a substantial factor and proximate

22   cause in causing damages and losses to Plaintiff and the Class.

23        96.    Plaintiff and the Class were injured as a direct and proximate result of

24   Defendant's conduct because (a) they would not have purchased the Products if they

25   had known the truth, (b) they overpaid for the Products because the Products were

26   sold at a price premium due to the misrepresentation, and/or (c) they did not receive

27

28

the discounts they were promised, and received Products with market values lower than the promised market values.

97.    For the claims under California's False Advertising Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## **Second Cause of Action:**

### **Violation of California's Consumer Legal Remedies Act**
### **(By Plaintiff and the California Class)**

98.    Plaintiff incorporates each and every factual allegation set forth above.

99.    Plaintiff brings this cause of action on behalf of herself and members of the California Class.

100.    Plaintiff and the California Class are "consumers," as the term is defined by California Civil Code § 1761(d).

101.    Plaintiff and the California Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

102.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

103.    As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

104.    Defendant violated, and continues to violate, section 1770 of the California Civil Code.

105.    Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for its Products.

106.    Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

107.    And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (*e.g.*, "Spring Sale" when in fact Defendant has ongoing sales).

108.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

109.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Comfrt Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchasing decision.

110.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Comfrt Products.

111.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Class.

112.    Plaintiff and the California Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

113.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the California Class, seeks injunctive relief.

114.    CLRA § 1782 NOTICE. On October 2, 2025, a CLRA demand letter on behalf of Ms. Saini was sent to Defendant's Florida headquarters via certified mail (return receipt requested). The letter provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendant does not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt, Plaintiff and the California Class will seek all monetary relief allowed under the CLRA.

115.    The CLRA venue declaration is attached.

### **Third Cause of Action:**

### **Violation of California's Unfair Competition Law**

### **(By Plaintiff and the California Class)**

116.    Plaintiff incorporates each and every factual allegation set forth above.

117.    Plaintiff brings this cause of action on behalf of herself and members of the California Class.

118.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

119.   Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the Federal Trade Commission Act (FTCA). The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 USC § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1.

***The Deceptive Prong***

120.   As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

121.   Defendant's representations were misleading to Plaintiff and other reasonable consumers.

122.   Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

123.   As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

124.   Defendant violated established public policy by violating the CLRA, FAL, and FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, FAL, and FTCA).

125.   The harm to Plaintiff and the California Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing

benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

126. Plaintiff and the California Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

127. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

\* \* \*

128. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Comfrt Products. Defendant's representations were a substantial factor in Plaintiff's purchasing decision.

129. In addition, class-wide reliance can be inferred because Defendant's representations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy Comfrt Products).

130. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Class members.

131. Plaintiff and the California Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

132. For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the California Class as a result of Defendant's unlawful conduct.

1

**Fourth Cause of Action:**

2

**Breach of Contract**

3

**(By Plaintiff and the California Class)**

4     133.   Plaintiff incorporates each and every factual allegation set forth above.

5     134.   Plaintiff brings this cause of action on behalf of herself and the California

6     Class.

7     135.   Plaintiff and class members entered into contracts with Comfrt when they

8     placed orders to purchase Products.

9     136.   The contracts provided that Plaintiff and class members would pay

10    Comfrt for the Products ordered.

11    137.   The contracts further required that Comfrt provide Plaintiff and class

12    members with Products that have a market value equal to the advertised list prices.

13    They also required that Comfrt provide Plaintiff and the class members with the

14    discount advertised. These were specific and material terms of the contract.

15    138.   The specific discounts were a specific and material term of each contract,

16    and were displayed to Plaintiff and class members at the time they placed their orders.

17    139.   Plaintiff and class members paid Comfrt for the Products they ordered,

18    and satisfied all other conditions of their contracts.

19    140.   Comfrt breached the contracts with Plaintiff and class members by failing

20    to provide Products that had a prevailing market value equal to the list price, and by

21    failing to provide the promised discount. Comfrt did not provide the discount that

22    Comfrt had promised.

23    141.   Plaintiff provided Defendant with notice of this breach, by mailing notice

24    letters to Defendant's registered agent and Florida headquarters on October 2, 2025.

25    142.   As a direct and proximate result of Defendant's breaches, Plaintiff and

26    class members were deprived of the benefit of their bargained-for exchange, and have

27    suffered damages in an amount to be established at trial.

28

143.   For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the other class members as a result of Defendant's unlawful conduct.

### Fifth Cause of Action:

### Breach of Express Warranty

### (By Plaintiff and the California Class)

144.   Plaintiff incorporates each and every factual allegation set forth above.

145.   Plaintiff brings this cause of action on behalf of herself and the California Class.

146.   Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Comfrt Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the list price. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

147.   This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

148.   In fact, Comfrt Products' stated market values were not the prevailing market values. Thus, the warranty was breached.

149.   Plaintiff provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's registered agent and Florida headquarters on October 2, 2025.

150.   Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price

premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

151.   For their breach of express warranty claims, Plaintiff seeks all damages available, including expectation damages and/or damages measured by the price premium charged to Plaintiff and the other class members as a result of Defendant's unlawful conduct.

<u>**Sixth Cause of Action**</u>:

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiff and the California Class)**

152.   Plaintiff incorporates paragraphs 1-68, 75-85.

153.   Plaintiff brings this cause of action in the alternative to her Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the California Class.

154.   As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Comfrt Products and to pay a price premium for these Products.

155.   In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

156.   (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other class members are void or voidable.

157.   Plaintiff and the class seek restitution, and in the alternative, rescission.

158.   For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the class as a result of Defendant's unlawful conduct.

1
2
3

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(By Plaintiff and the California Class)**

4
    159.    Plaintiff incorporates each and every factual allegation set forth above.

5
    160.    Plaintiff brings this cause of action on behalf of herself and members of

6
the California Class.

7
    161.    As alleged more fully above, Defendant made false representations and

8
material omissions of fact to Plaintiff and class members concerning the existence

9
and/or nature of the discounts and savings advertised.

10
    162.    These representations were false.

11
    163.    When Defendant made these misrepresentations, it knew or should have

12
known that they were false. Defendant had no reasonable grounds for believing that

13
these representations were true when made.

14
    164.    Defendant intended that Plaintiff and class members rely on these

15
representations and Plaintiff and class members read and reasonably relied on them.

16
    165.    In addition, class-wide reliance can be inferred because Defendant's

17
misrepresentations were material, i.e., a reasonable consumer would consider them

18
important in deciding whether to buy Comfrt Products.

19
    166.    Defendant's misrepresentations were a substantial factor and proximate

20
cause in causing damages and losses to Plaintiff and class members.

21
    167.    Plaintiff and the California Class were injured as a direct and proximate

22
result of Defendant's conduct because (a) they would not have purchased the Products

23
if they had known that the representations were false, (b) they overpaid for the

24
Products because the Products were sold at a price premium due to the

25
misrepresentation, and/or (c) they did not receive the discounts they were promised,

26
and received Products with market values lower than the promised market values.

27
28

168.    For the negligent misrepresentation claim, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the California Class as a result of Defendant's unlawful conduct.

## Eighth Cause of Action:

### Intentional Misrepresentation

### (By Plaintiff and the California Class)

169.    Plaintiff incorporates each and every factual allegation set forth above.

170.    Plaintiff brings this cause of action on behalf of herself and members of the California Class.

171.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and class members concerning the existence and/or nature of the discounts and savings advertised.

172.    These representations were false.

173.    When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

174.    Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

175.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Comfrt Products.

176.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

177.    Plaintiff and the California Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the

Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

178.    For the intentional misrepresentation claim, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the California Class as a result of Defendant's unlawful conduct.

**VII.  Relief.**

179.    Plaintiff seeks the following relief for herself and the class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just and equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

**Demand For Jury Trial**

180.    Plaintiff demands the right to a jury trial on all claims so triable.

Dated: October 21, 2025                    Respectfully submitted,

By: */s/ Rick Lyon*
Rick Lyon (Cal. Bar No. 229288)
rick@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600

Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorney for Plaintiff*